subsequently resigned his seat, and the subject does not appear to have been again agitated.[1]

[The question was probably considered by Mr. Gore, to have been settled by the vote above stated.]

thereby vacate their seats, this provision of law has been made use of, and is constantly resorted to, in order to enable members to evade the parliamentary restriction as to resignation. Two or three offices, which are now merely nominal in their character, are appropriated by the government for this purpose. Whenever a member of the house of commons, of whatever party, wishes to relinquish his seat, he applies to the proper department of government for an appointment to one of these offices; which being conferred upon him (and they are seldom or never refused) his seat in parliament is thereby vacated. The object of the appointment being thus effected, the office is immediately resigned. The offices usually conferred for this purpose are those of steward or bailiff of the three Chiltern Hundreds, Stoke, Desborough, and Bonenham, or of the manors of East Hendred and Northstead.

In 1826, the poet Southey, who had been elected a member for Downton, during his absence on the continent, availed himself of the provision of law mentioned in a note on a preceding page, requiring members to possess a certain amount of property, in order to avoid serving as a member. He addressed a letter to the speaker, in which he stated, that he did not possess the estate required by law to qualify him as a member; and the house thereupon, after waiting the proper time, issued a writ for a new election.

In this country, it is probably true, that every person, elected a member of a legislative assembly, may decline the office; but if he accepts, and takes his seat, it may be doubted, whether he can resign without the consent of the body of which he is a member.

[1] 10 J. H. 207.

## 1790—1791.

### YORK.

The office of judge of the district court of the United States, is incompatible with that of representative in the legislature of this commonwealth.

THE Hon. David Sewall, judge of the district court for the district of Maine, appearing to take his seat as a member from the town of York; on motion, it was ordered, that a time be assigned for considering the validity of his election, and that he be heard on the subject. The house having considered the subject, at the time assigned, it was made a question, whether

Mr. Sewall, being a judge of the district court of the United States, has a right, by the constitution of this commonwealth, to a seat in this house? and being taken by yeas and nays, it was decided in the negative, 5 yeas and 111 nays.   A precept was then ordered to the town of York for a new election.[1] [See the eighth article of the amendments to the constitution, which provides, that "no person holding any office under the authority of the United States, (postmasters excepted) shall, at the same time, hold the office of governor, lieutenant-governor, or counsellor, or have a seat in the senate, or house of representatives of this commonwealth."]

### DANVERS.

Notice of town-meeting.—Proceedings in same.—Question as to their regularity.

The election of the member returned from the town of Danvers was called in question, by Daniel Prince and others of that town, for the following reasons, stated in their petition: that "the notice for the meeting, at which the election took place, was posted up not more than twenty-nine hours before the time appointed, upwards of fourteen hours of which was holy time, and six hours of the night following being necessarily spent in sleep, some of the inhabitants had only six hours notice, and others none at all, of the time appointed for the meeting; whereas, the almost invariable custom of the town has been to have the notices of meetings for such purposes posted up at the meeting-house, two sabbath days previous to the time appointed; and, that at the time, when the few, who had notice, were assembled, a number of young people had also assembled in the galleries, for the purpose of singing, in which they were engaged, together with one of the selectmen, while the voters were carrying in their votes for a representative, notwithstanding repeated request made to the other selectmen to call the meeting to order."   The petitioners, upon

[1] 11 J. H. 172, 175.